# De ARNAUD v. AINSWORTH.

MILITARY LAW; MEDALS OF HONOR; CIVIL LIBEL; PRIVILEGED COMMUNICA-
TIONS; PUBLICATION; SECRETARY OF WAR.

1. It is only those who have distinguished themselves in action whose
services are intended to be signalized by medals of honor under the
act of Congress of March 3, 1863 (12 Stat. at L. 751, chap. 79), pro-
viding for the distribution by the President of medals of honor. A
person rendering services as a spy, or as a military expert, however
important and valuable such services may be, is not within the mean-
ing of the statute.
2. Public policy affords absolute protection and immunity for what may
be said or written by an officer in his official report or communication
to a superior, when such report or communication is made in the
course and discharge of official duty, and the question of motive, or
whether there was a want of good faith in the making of such report,
is immaterial; so that, a report by the chief of the record and pen-
sion office of the War department to the Secretary of war, made under
departmental regulations, and as the result of an application for a
medal of honor for distinguished services, wherein the applicant is
charged with fraud, is absolutely privileged.
3. The Secretary of war is the regularly constituted organ of the Presi-
dent for the administration of the military establishment of the United
States, and rules and orders promulgated through him must be re-
ceived as those of the executive, and as such be binding upon all
within the sphere of his legal and constitutional authority; and the
work of his subordinates is, in contemplation of law, the work of his
department, and is entitled to the same privileged protection that
would attach to it if done by the secretary in person.
4. A report of a bureau officer of an executive department of the govern-
ment, when incorporated in a printed Senate document as part of a
committee report, becomes a public document which every person is
entitled to receive, inspect, and circulate; and, if such bureau officer
gives or loans to another person such a Senate document, he does not
incur liability as for a publication of a libel.

No. 1360. Submitted March 18, 1904. Decided October 11, 1904.

HEARING on an appeal by the plaintiff from a judgment of

the Supreme Court of the District of Columbia upon the verdict of the jury directed by the court in an action for an alleged libel.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an action for an alleged libel, brought by Charles A. De Arnaud against Fred. C. Ainsworth. The judgment below was for the defendant, and the plaintiff has appealed.

The plaintiff in his declaration, containing three counts, in a long prefatory statement by way of inducement, among other things, alleges that on or about the 5th day of September, 1861, and before the grievances complained of, he was in the military service of the United States government, holding an appointment as a captain in the army of the United States, and serving on the staff of the late John C. Fremont, a major general in said army, then in command of the western department; that during the summer and fall of the year 1861, he performed, at the risk of his life, extraordinary services under the command and by the order of said general commanding said western department, by invading the lines of the Confederate forces in the States of Tennessee and Kentucky, said forces then being engaged in hostile operations against the United States, for which services it was agreed by General Fremont, in behalf of the government, that the plaintiff should be paid a munificent remuneration. That he made report of his services to headquarters of the western army, and that he received the highest commendation therefor from General Fremont and other commanding officers for the value of the services so rendered. The plaintiff then alleges that prior to April 24, 1895, he had made application to the war department of the United States for a medal of honor, on account of such services, which application was, at the date last mentioned, pending before the Secretary of war, and the plaintiff had pending at the time in the court of claims a suit against the United States for the recovery of a claim for the value of said services; and at the same time the plaintiff was seeking relief of Congress of the United States, by means of certain bills

which he had procured to be introduced therein, and that he had
an application for a pension then pending before the Secretary
of the interior on appeal from the Commissioner of Pensions;
and that, prior to that time, the plaintiff had been tried in the
supreme court of the District of Columbia on an indictment
charging him with making a false, fictitious, and fraudulent
claim for pension, and of which charge he had been acquitted by
a jury. Yet the defendant, well knowing the premises, but con-
triving and maliciously intending to injure the plaintiff in his
good name and fame, and to bring him into public scandal, in-
famy, and disgrace, etc., and to vex, harass, oppress, and impov-
erish the plaintiff, and to wholly ruin him in his efforts to obtain
the relief aforesaid, did, on the 24th day of April, 1895, falsely
and maliciously compose and publish, and procured to be pub-
lished, of and concerning the plaintiff, and of and concerning
his military services and of the premises aforesaid, a false, scan-
dalous, malicious, and defamatory libel, containing, among
other things, the following: "That De Arnaud (meaning the
plaintiff) considered himself and was considered by others, in
1861, to be simply a civilian who was employed in the secret
service of the government, and who was afterwards making
strenuous efforts to obtain compensation for the service so ren-
dered, and that the claim which he first brought forward nearly
a quarter of a century after the service ended, to the effect that
he was appointed or commissioned an officer in the military
service of the United States, has no foundation other than an
insane imagination or a desire to perpetrate an impudent and
bare-faced fraud." The declaration then sets out at much length
several other parts of the report made by the defendant to the
Secretary of war, and all of which are more or less severe in
their strictures and comments upon the claims set up by the
plaintiff, and upon his conduct and character as deduced from
the facts stated in the report. The report was adverse to the
claims of the plaintiff, and tended to show that they were en-
tirely without any just foundation in morals or fact.

It is then alleged in the first count of the declaration, and also

in the two succeeding counts based upon the same alleged libel, that, by means of the publication of said libel, the plaintiff hath been and is greatly injured in his military record, and in his good name, fame, and credit, and brought into public scandal and infamy and disgrace amongst his comrades, senators, and other members of Congress, and hath been injured in the prosecution of his claim for pension, and in his efforts to secure relief in Congress, etc., in so much that he has been defeated in his efforts to obtain relief from Congress or otherwise, upon his various applications.

As we have stated, the declaration contains three counts, the two latter setting forth and counting upon the same alleged libel as that set forth in the first count, but alleging the publication to have been made on different days and times.     In the first count the publication of the libel is alleged to have been made on the 24th day of April, 1895; in the second on April 12, 1902, and in the third, on September 8, 1902.     The defendant pleaded the general issue of not guilty to all the counts, and the plea of the statute of limitations.     Upon these issues the case was brought to trial.

Before referring to the evidence offered by the plaintiff as set out in the bill of exception, it is proper to refer to the provisions of two acts of Congress which become material, and upon which the defense to the action to a large extent depends.     The first of these is the act of March 3, 1863, 12 Stat. at L. 751, chap. 79, § 6, by which it is provided, "that the President cause to be struck from the dies recently prepared at the United States mint for that purpose 'medals of honor' additional to those authorized by the act [Resolution] of July 12, 1862, and present the same to such officers, noncommissioned officers, and privates as have most distinguished, or who may hereafter most distinguish, themselves in action."     The other act is that of March 9, 1892, by which it is provided that —

"The division organized by the Secretary of war in his office for the preservation and custody of the records of the volunteer armies under the name of the record and pension division is

hereby established as now organized, and shall hereafter be known as the record and pension office of the War department; and the President is hereby authorized to select an officer of the army whom he may consider to be especially well qualified for the performance of the duties hereinafter specified and, by and with the advice and consent of the Senate, to appoint him in the army to be chief of said office, who shall have the rank, pay, and allowances of a colonel, and shall, under the Secretary of war, have charge of the military and hospital records of the volunteer armies and the pension and other business of the War department connected therewith." 27 Stat. at L. 27, chap. 62, U. S. Comp. Stat. 1901, p. 113.

It was admitted by the plaintiff, as stated in the bill of exception, that the defendant was on March 9, 1895, the date of the plaintiff's application for the medal of honor, and until after the trial, the chief of the record and pension office of the War department.   The plaintiff then gave evidence to show that he, by his attorney, on March 9, 1895, made application to the Secretary of war, for a medal of honor, under the act of Congress of March 3, 1863, for distinguished services rendered by him to the government during the Civil war.   By this application the plaintiff requested that there should be issued to him "the highest gold medal that could be awarded for the distinguished military services rendered by him as recited."   In his application he recites that he was, at the time of the services rendered, a captain in the army of the United States, on the staff of General Fremont; that he was, at the time he volunteered his services, "a Russian officer of great military talent; and that he volunteered his services and talent at a time and at a point when there was crying need of such aid.   That, taking his life in his hands, he penetrated the territory of the enemy, secured information of vital importance to the Union cause in the west, and was desperately wounded, yet he bore his news to General Grant in time to save Paducah and to prevent the invasion of Southern Illinois.   Later on, he was again wounded desperately, and was obliged to leave for Europe for medical treatment.

The wound in his head resulted in a brain attack affecting his mind and causing his confinement in an asylum and treatment for over twenty years, when he was able to return to this country." It was for the services thus recited that the application was made for the highest gold medal of honor that could be awarded by the President, under the statute, for distinguished services rendered in action.

The application thus made was in due and regular course of proceeding, under the regulations of the department, referred to the head of the bureau of the record and pension office for investigation and report. By the regulation of the department it was required that the report should "show the question to be decided and conclude with an opinion or recommendation," and that, when necessary, the laws, orders, or customs of the service should be stated, "and the case made complete in itself, so that reference to previous papers will only be necessary to afford more definite information upon matters already summarized in the report."

By authority of the reference made to the chief of the record and pension office, the defendant, in the exercise of the duties of his office, made a report upon the entire case, embracing all the claims, and the merits of the claims set up by the plaintiff for recognition, and the award of honor under the statute, for the alleged services rendered. All claims made had reference to these services, and had no foundation if the services were not rendered as alleged. The character of the claims made reflected upon each other. It was therefore necessary to investigate the whole case stated by the plaintiff, and to determine upon the truth or falsehood of what was alleged by him as the basis of his claim to honorable decoration. The report is dated April 24, 1895, and is addressed to the Secretary of war, and no other publication of the report was made at that time. The conclusion reached by the defendant, as stated in his report was that De Arnaud was never an officer, and that the services claimed by him to have been performed are grossly and fraudulently exaggerated, and in part wholly fictitious. This report, upon

identification, was offered in evidence by the plaintiff, but, upon objection by the defendant, it was rejected by the court, to which ruling the plaintiff excepted.

It was then shown in evidence by the plaintiff, that a considerable time after the date of the report made to the Secretary of war, and after the matter of the claim for large compensation for military services rendered by the plaintiff had been made to Congress and adversely reported upon by the committee on military affairs of the Senate, and the report of the committee, incorporating as part thereof the report made by the defendant to the Secretary of war, had been duly published as part of congressional proceedings, a person by the name of Hill called upon the defendant at the office of the latter, professedly in search of such information in regard to the plaintiff as could be afforded by the records in the defendant's office.   The defendant, in answer to a question from Hill, stated that he had written a report upon the military career of the plaintiff, and informed the witness Hill that he could find a copy of it at the Capitol; and upon Hill's saying that he did not care enough about the matter to go for it, the defendant produced from a place of deposit in his office a copy of the published report of the Senate committee, which he handed to Hill, saying that it would prove the plaintiff "to be a fraud" or "a great fraud."   The report of the committee, as we have stated, incorporated therein as part thereof, the whole of the report made by the defendant to the Secretary of war, with full approval, and which report of the committee had been ordered to be printed by the Senate, and had been accordingly printed as a public document of that body. This handing of the printed report of the Senate committee to Hill, containing the report of the defendant to the Secretary of war, is the supposed publication of the alleged libel as set out in the third count of the declaration, and the publication is laid as of the 8th day of September, 1902.   There was no evidence offered of publication under the second count.   The report made by the defendant, and so incorporated in the report made by the Senate committee, was offered in evidence by the plaintiff

to prove publication thereof by the defendant on the 8th day of September, 1902, upon identification thereof by said witness Hill. But the same was objected to by the defendant on the ground that the original of the report so offered in evidence was absolutely privileged, and the copy thereof contained in the report of the Senate committee was a public document, and was equally privileged. The court sustained the objection, and refused to admit said report so offered in evidence by the plaintiff; and the latter excepted to such ruling.

The plaintiff then offered to prove express malice on the part of the defendant in the preparation and publication of the report to the Secretary of war, by introducing therein matter prejudicial to the plaintiff, and omitting therefrom matters that were favorable to him. But, upon objection, such proffered evidence was excluded; and the court thereupon directed a verdict for the defendant, to which an exception was taken by the plaintiff.

*Mr. Francis P. B. Sands, Mr. Andrew A. Lipscomb,* and *Mr. W. L. Elterich* for the appellant.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. Charles A. Keigwin* and *Mr. Jesse C. Adkins,* Assistants, for the appellee.

Mr. Chief Justice Alvey delivered the opinion of the Court:

Upon the exceptions taken, the questions presented and argued on the part of the plaintiff are —

1. That the making and delivery of the report by the defendant to the Secretary of war was such a libelous publication as rendered the defendant liable therefor; and, even if privileged at all, it was only qualifiedly so.

2. But even if the making and original delivery of the report to the Secretary of war by the defendant was absolutely privileged, yet, the subsequent delivery to the witness Hill by the defendant of a copy of the report as contained in and forming

a part of the report of the Senate committee on military affairs, and published by the authority of the Senate, as a public document, constituted such publication by the defendant of the report made by him as will render him liable to an action for libel.

3. And, if either of the foregoing propositions be held to be sound, it follows that the court below was in error in the rulings made by it, and in directing a verdict to be rendered for the defendant.

These propositions, one and all, are controverted by the defendant; and, on his part, it is contended: 1st. That the report made by him, as chief of the record and pension office, to the Secretary of war, is absolutely privileged, and that he is not liable in an action for libel for anything contained in that report. But, if the privilege be only of a qualified nature, the action is barred by the statute of limitations, which has been duly pleaded.

2. That the handing of a copy of the report made by the defendant to the witness Hill, as contained in and forming part of the report of the Senate committee on military affairs, after that report had been published by the authority of the Senate as a public document, did not constitute a libelous publication of the report made by the defendant, and he is not liable therefor in an action for libel; and consequently the court below committed no error in directing a verdict for the defendant.

The foregoing propositions have been argued very elaborately by the counsel for the respective parties, both orally and in briefs; but, in the view we have of the case, it will not be necessary to discuss each of the questions at large.

The occasion of the report made by the defendant to the Secretary of war, and which report forms the subject-matter of the alleged libel, was the application made by the plaintiff for a gold medal of honor, under the act of Congress of March 3, 1863. The application was addressed to the Secretary of war, though, by the terms of the statute, the President was required to act in granting or refusing the medal of honor. The appli-

cation necessarily involved a careful investigation of the facts upon which the application for the honor was founded. This investigation into the facts alleged in the application, and into the character and merits of the applicant, could only be made through the War department; and the defendant, by the authority of the Secretary of war, was the proper officer to make the investigation and report fully on the application, stating his conclusions and opinion upon the facts found by him. This was required by the regulations of the department, and under which the matter was referred to the defendant. In making the report, therefore, the defendant was in the exercise of his official duty, as chief of the record and pension office, that office being a bureau of the War department, and subject to the orders and control of the Secretary of war. The action is brought against the defendant in his private individual character, and without reference to his official duties or position; but this can make no difference so far as his right of defense is concerned. It is sufficiently shown, in fact conceded, that the defendant was a colonel in the regular army, and was duly appointed to and held the position of chief of the record and pension office, and that it was in that character that he made the report to the Secretary of war of which complaint is made. It is argued, however, that the defendant, in making his report to the Secretary, transcended the limits of his authority in the premises, and made statements of facts and drew conclusions therefrom, in respect to the plaintiff's character, both military and civil, wholly unwarranted by the nature of the reference to him. But this depends upon the nature and extent of the inquiry to be made, and the questions of fact involved therein. By the application for the medal of honor, the plaintiff not only submitted for determination the question of the truth of the particular facts alleged by him to entitle him to the mark of distinction claimed, but he submitted to scrutiny his character for honor, integrity, and bravery as a soldier, such as would distinguish him among soldiers who had acquired title to distinction. To confer the medal of honor upon a party unworthy and without just claim

to such distinction, would be to depreciate the mark of distinction conferred upon those really entitled to enjoy it. Hence the importance of a full inquiry into the merits and character of the applicant for the honor. None but those who had most distinguished themselves in action were entitled to be decorated with the medal of honor. Unless the plaintiff had shown himself thus to be distinguished in action he could have no claim to the honor under the statute; nor was the President required to confer the honor for mere acts of adventure. The statute was intended to authorize the conferring of a special decoration of honor for the exhibition of high soldierly qualities in action. A person rendering services as a spy, or as a "military expert" as the plaintiff denominated himself, however important or valuable such services might be, and therefore entitled to high compensation, could hardly have been intended by the statute to be decorated by a medal for most distinguished services in action. It was only the heroic in action whose services were intended to be signalized by medals of honor.

If the report complained of as a libel had been made by the Secretary of war to the President for his action, it could hardly be contended for a moment that an action for libel could be maintained against the Secretary; and as the defendant in this case was the duly appointed official to make the investigation and report to the Secretary for the action of the President, the same reason applies for the privilege of the report that would apply if the investigation and report had been made by the Secretary in person. The report is the official action of the War department, and it was made in the course of official duty of the person required to make it. There is nothing in the report that does not relate to or reflect upon the alleged questionable character of the plaintiff and the want of just foundation for the claim to honorable distinction set up by him.

The question of motive, or whether there was a want of good faith on the part of the defendant, in the making of the report, is not a material question in the case. A party is not liable for the motives with which he discharges an official duty; nor is he

liable for any mistake of fact he may commit in the course of the exercise of that duty. Public policy affords absolute protection and immunity for what may be said or written by an officer in his official report or communication to a superior, when such report or communication is made in the course and discharge of official duty. Otherwise the perfect freedom which ought to exist in discharge of public duty might be seriously restrained, and often to the detriment of the public service. Of course, when a party steps aside from duty and introduces into his report or communication defamatory matter wholly irrelevant and foreign to the subject of inquiry, a different question is presented. But no such question is presented here; and the action is not attempted to be founded upon libelous matter extraneous to the proper subject of inquiry, but upon the report made by the defendant as an entirety.

The real question presented in this case would seem to be quite conclusively determined by the decision of the Supreme Court of the United States in the case of *Spalding* v. *Vilas,* 161 U. S. 483, 40 L. ed. 780, 16 Sup. Ct. Rep. 631. It is true, the facts of that case were quite different from the facts of the present case, but the question in that case was as to the extent of the privilege that belonged to the official acts of the representatives of the several departments of the government while in performance of their duties. In that case it was contended for the plaintiff that the circular issued from the Postoffice department, by the direction of the Postmaster General, was beyond the scope of any authority possessed by that officer; and, therefore, the sending of the circular to the person who had presented claims against the government, was not justified by law, and would not protect the Postmaster General from responsibility for the injury done to the plaintiff from that act. But the court held otherwise, and, in the opinion of the court, delivered by Mr. Justice Harlan, in speaking of the facts of that case, it was said: "Besides, the statement that 'no attorney's services were necessary to the presentation of the claim,' if not strictly accurate, was, at most, only an expression of the opinion of the Post-

master General in the course of his official duties.  As he was
charged with the execution of the will of Congress in relation
to the readjustment of those salaries, he was entitled to express
his opinion as to the object for which the act of 1883 was passed,
and to indicate what, in his judgment, was necessary to be done
in order to bring claims under that act properly before the de-
partment."   And after a full review of the facts and the prin-
ciples of law applicable to them, and especially in  view of sev-
eral recent English cases referred to and quoted from with ap-
proval, the court, in the conclusion of its opinion, says:

"We are of opinion that the same general considerations of
public policy and convenience which demand for judges of
courts of superior jurisdiction immunity from civil suits for
damages arising from acts done by them in the course of the per-
formance of their judicial functions, apply to a large extent to
official communications made by heads of executive departments
when engaged in the discharge of duties imposed upon them by
law.   The interests of the people require that due protection
be accorded to them in respect of their official acts.   As in the
case of a judicial officer, we recognize a distinction between
action taken by the head of a department in reference to mat-
ters which are manifestly or palpably beyond his authority, and
action having more or less connection with the general matters
committed by law to his control or supervision.   Whatever
difficulty may arise in applying these principles to particular
cases, in which the rights of the citizen may have been materially
impaired by the inconsiderate or wrongful action of the head of
a department, it is clear — and the present case requires nothing
more to be determined — that he cannot be held liable to a civil
suit for damages on account of official communications made by
him pursuant to an act of Congress, and in respect of matters
within his authority, by reason of any personal motive that
might be alleged to have prompted his action; for personal
motives cannot be imputed to duly authorized official conduct.
In exercising the functions of his office, the head of an executive
department, keeping within the limits of his authority, should

not be under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages.    It would seriously cripple the proper and effective administration of public affairs as intrusted to the executive branch of the government, if he were subjected to any such restraint.    He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested.    But if he acts, having authority, his con- duct cannot be made the foundation of a suit against him per- sonally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuri- ously affects the claims of particular individuals.    In the pres- ent case, as we have found, the defendant, in issuing the circular in question, did not exceed his authority, nor pass the line of his duty, as Postmaster General.    The motive that impelled him to do that of which the plaintiff complains is, therefore, wholly immaterial.    If we were to hold that the demurrer ad- mitted, for the purposes of the trial, that the defendant acted maliciously, that could not change the law."

There is no reasonable foundation for the contention that, because the defendant was not at the head of the War depart- ment, therefore his report was not entitled to the privilege that would attach to a similar report made by the Secretary of war. The Secretary of war is the regularly constituted organ of the President for the administration of the military establishment of the nation; and rules and orders publicly promulgated through him must be received as those of the executive, and, as such, be binding upon all within the sphere of his legal and constitutional authority.    *United States* v. *Eliason,* 16 Pet. 291, 302, 10 L. ed. 968, 973.    And, as it is impossible for a single individual to perform in person all the various duties assigned to the particular department of which he is head, he must of necessity, under proper orders and regulations, perform the larger portion of such duties through the agencies of the heads of bureaus and divisions of his department.    But the work

when done is, in contemplation of law, the work of the depart-
ment, and is entitled to all the privilege and protection that
would attach to it if done by the Secretary in person.  It is,
therefore, not the particular position of the party making the
report or communication that entitles it to absolute privilege so
much as the occasion of making it, and the reasons of public
policy for the immunity.  This is fully exemplified in the case
of *Home* v. *Bentinck,* 2 Brod. & B. 130, decided in the English
exchequer chamber in 1820.  In that case it was held that a
report made by the president of a court of inquiry directed to
be held by the commander-in-chief to inquire into the conduct
of an officer in the army was a privileged communication, and
that it was properly rejected as evidence at the trial of an action
for libel, and that an office copy of it was also properly rejected.
Indeed, the principle is fully illustrated by the English cases
referred to with approval by the Supreme Court in the case of
*Spalding* v. *Vilas,* 161 U. S. 483, 40 L. ed. 780, 16 Sup. Ct.
Rep. 631.

The first of the cases so referred to by the Supreme Court is
that of *Dawkins* v. *Paulet,* L. R. 5 Q. B. 94, 114.  That was a
case, as stated by the Supreme Court, of an action for libel,
brought by an officer of the army against his superior officer, to
recover damages on account of a report made by the latter in
relation to certain letters of the former, and where the defendant
claimed that what he did was done in the course of and as an
act of military duty.  The replication stated that the libel was
written by the defendant of actual malice, without any reason-
able, probable, or justifiable cause, and not bona fide or in the
bona fide discharge of the defendant's duty as such superior
officer.  The case was heard on demurrer to the replication, and
it was held by the court (the chief justice dissenting), that the
action would not lie.  In the opinion of Mellor, J., as quoted by
the Supreme Court, it is said: "I apprehend that the motives
under which a man acts in doing a duty which it is incumbent
upon him to do cannot make the doing of that duty actionable,
however malicious they may be.  I think that the law regards

the doing of the duty, and not the motives from or under which it is done.    In short, it appears to me that the proposition resulting from the admitted statements on this record amounts to this:   Does an action lie against a man for maliciously doing his duty?   I am of opinion that it does not; and therefore, upon the pleadings as they stand we might give judgment for the defendant."

Another case referred to and quoted from by the Supreme Court is that of *Dawkins* v. *Rokeby,* L. R. 8 Q. B. 255, 262, the judgment in which was affirmed by the House of Lords, in L. R. 7 H. L. 744, 754.    In that case the defendant, a general in the army, was called before a court of inquiry legally assembled to inquire into the conduct of the plaintiff, also an officer in the army.    He made statements in evidence, and after the close of the evidence, he handed in a written paper (not called for by the court, but which had reference to the subject of the inquiry) as to the conduct of that officer.    An action was brought in respect of those statements, which were alleged to be both untrue and malicious.    That case came before the Queen's bench, and in the exchequer chamber, upon a bill of exception allowed by Mr. Justice Blackburn, who had instructed the jury, as matter of law, that the action would not lie if the verbal and written statements complained of were made by the defendant, being a military officer, in the course of a military inquiry, in relation to the conduct of the plaintiff, he being also a military officer, and with reference to the subject of that inquiry; and this even though the plaintiff should prove that the defendant had acted *mala fide,* and with actual malice, and without any reasonable or probable cause, and with the knowledge that the statements made and handed in by him were false.    The court, all the judges concurring, sustained the correctness of this ruling, and held that the statements were privileged.    The language of Lord Chancellor Cairns is quoted by the Supreme Court, by which he declared his opinion as follows:   "Adopting the expressions of the learned judges with regard to what I take to be the settled law as to the protection of witnesses in judicial

proceedings, I certainly am of opinion that upon all principles, and certainly upon all considerations of convenience and of public policy, the same protection which is extended to a witness in a judicial proceeding, who has been examined on oath, ought to be extended, and must be extended, to a military man who is called before a court of inquiry of this kind for the purpose of testifying there upon a matter of military discipline connected with the army. It is not denied that the statements which he made, both those which were made *viva voce* and those which were made in writing, were relative to that inquiry." The opinion of the judges was unanimously adopted, and the judgment of the exchequer chamber was affirmed by the House of Lords.

But a still closer case, by analogy to the present, than any we have referred to, is the case of *Chatterton* v. *Secretary of State,* decided in the English court of appeal [1895] 2 Q. B. 189. That case is not referred to in the case of *Spalding* v. *Vilas,* because, as we may suppose, the report of the case was not then accessible to the Supreme Court. The principle decided in that case is, that a communication relating to state matters by one officer of state to another in the course of his official duty is absolutely privileged and cannot be made the subject of an action for libel. It appears that, in that case, the statement complained of was made by the secretary of state for India to the parliamentary under-secretary for India, in order to enable him to answer a question asked in the House of Commons with regard to the treatment of the plaintiff, an officer in the India staff corps, by the Indian military authorities and government. The claim was for damages for libel from the defendant in that he conveyed, or caused to be conveyed, in writing to the under-secretary of state untrue statements affecting the professional reputation of the plaintiff, a captain in Her Majesty's India staff corps; wherein it was said that in a despatch in the defendant's possession the Commander-in-Chief, etc., recommended the removal of the plaintiff to the half-pay list as an officer whose retention on the effective list was in every way most undesirable,

etc.; with intent to injure the plaintiff. The court of appeal was unanimous in holding that the action would not lie. Lord Esher, M. R., in his opinion, said: "The plaintiff in this case has brought an action of libel against the secretary of state for India in council. It would seem from the form of the action that it is meant to be brought against him in his official capacity, treating him as a corporation, not against him personally. But it would have made no difference if it had been brought against him as an individual. The substance of the case is that it is an action brought against him in respect of a communication in writing made by him as secretary of state, and, therefore, a high official of the state, to an under-secretary of state in the course of the performance of his official duty. The master, the judge at chambers, and the divisional court have all come to the conclusion that the action is one which cannot by any possibility be maintained; that it is not competent to a civil court to entertain a suit in respect of the action of an official of state in making such a communication to another official in the course of his official duty; or to inquire whether or not he acted maliciously in making it. I think that conclusion was correct. The authorities which have been cited to us appear to show that, as matter of clear law, a judge at the trial would be bound to refuse to allow such an inquiry to proceed, whether any objection be taken by the parties concerned or not. It follows that such an action as this cannot possibly in point of law be maintained; and, that being so, to allow it to proceed would be merely vexatious and a waste of time and money." The other judges were of the same opinion.

It would seem to be clear, therefore, that the principle of absolute privilege is unquestionably established by the English authorities, as applicable to a case like the present; and that principle is not less clearly and fully established in this jurisdiction by the case of *Spalding* v. *Vilas,* to which we have referred.

Much reliance has been placed by the plaintiff upon certain passages that occur in the opinion of the court in the case of *White* v. *Nicholls,* 3 How. 287, 11 L. ed. 601, for the support of

his contention.   But that was quite a different case from the one now before us; and while the general language found in that case was quite applicable to the facts to which it was applied, the principle of that case has no application to a case like the present.   That was a case, at most, of qualified privilege, and where the privilege could be overcome by showing in proof the falsehood and actual malice of the defendant.   But, even if it were supposed that the present case was within the principle of *White* v. *Nicholls,* and that the report of the defendant was only entitled to a qualified privilege that could be overcome by proof, still, there could be no recovery for the making and publishing the report to the Secretary of war, as of April 24, 1895, and as charged in the first count of the declaration, for as to that the statute of limitations has been pleaded as a complete bar, and such defense is clearly applicable.

But it is contended in this case that, if the original report made to the Secretary of war was entitled to an absolute privilege, as we have shown it was, still, by the subsequent handing by the defendant to the witness Hill of a copy of the report of the Senate committee on military affairs having incorporated therein a copy of the report made by the defendant to the Secretary of war, such absolute privilege was lost, and the delivery of such copy to Hill was a libelous publication of the report for which the defendant is liable; and that the statute of limitations did not apply to such publication.

We are of opinion, however, that this contention is not maintainable.   There is nothing to show how the report made by the defendant got into the hands of the committee.   It was, however, a report of an official character, existing on file in the War department, and related to the subject-matter of inquiry before a committee.   It was therefore subject to the call of the committee if they deemed it necessary to enlighten them upon the subject under their consideration.   The committee did deem the report of importance, and therefore incorporated it into their own report to the Senate, which was adverse to the allowance of any portion of the claim of the plaintiff made before the Congress of the United States for extra compensation for the services

made the basis of the application for the medal of honor, and upon which application the defendant made his report to the Secretary of war.     The report of the committee, referring to and adopting the report of the defendant, was duly published as a Senate document, and was thus made accessible to the public. The terms "public documents" are defined by statute to be all publications printed by order of Congress or either House thereof.     Act Cong. June 23, 1874.     And by the act of Congress of January 12, 1895, entitled "An Act Providing for the Public Printing and Binding and the Distribution of Public Documents," it is provided that "documents and reports of committees, with the evidence and papers submitted therewith, or any part thereof, ordered printed by Congress, may be reprinted by the public printer on order of any member of Congress or' delegate, on prepayment of cost thereof," etc.     [28 Stat. at L. 606, chap. 23, § 37, U. S. Comp. Stat. 1901, p. 2536.].     It was under these statutory provisions and the rules of the Senate that the report of the committee was printed and published.   If, therefore, such publication by the authority of Congress was lawful, it is not perceived how the mere handing of a copy of that report to a third party by the defendant, after such publication by authority of Congress, could constitute a libelous publication for which an action could be sustained.     The report became a public document, and every person desiring it was entitled to receive and inspect it; and all persons giving circulation to the report thus published are protected by the law.     The defendant had the same right as other persons to own and to lend or give the report to persons desiring to see or use it, without incurring liability as for the publication of a libel.

It follows from what we have said that the court below committed no error in its several rulings in excluding the several offers of evidence by the plaintiff, including the report, and in directing the verdict for the defendant.     The judgment must therefore be affirmed, and it is so ordered.

*Judgment affirmed.*

A writ of error to the Supreme Court of the United States was prayed by the appellant and allowed October 19, 1904.