**P. F. HARTLINE, Plaintiff,**

v.

**H. P. CLARY and Edward Carswell,
Defendants.**

**James L. CARNER, Plaintiff,**

v.

**H. P. CLARY and Edward Carswell,
Defendants.**

**Civ. A. Nos. 3688, 3689.**

United States District Court
E. D. South Carolina,
Charleston Division.

May 5, 1956.

**152**

United States Treasury did with malice and without proper cause and without any authority apprehend the plaintiffs, take them into custody without proper cause and subjected them to physical abuse, including an assault upon one of them, took them to the Charleston County Jail and charged them before a United States Commissioner with the crime that the plaintiffs by threat endeavored to influence, intimidate, and impede a witness of the Government.

It is further alleged that the charges against the plaintiffs were dismissed by the United States Commissioner at a preliminary hearing for failure to show probable cause. The complaints further allege that the plaintiffs were damaged by further unlawful acts on the part of the defendants and that the acts on the part of the defendants constitute malice, false imprisonment and prosecution for which there was no probable cause.

The cases are now before me on defendants' motion that the actions be dismissed on the grounds that the complaints fail to state a claim against the defendants upon which relief can be granted.

Long, McCrae, Rittenberg & Seymour, Harold I. Lindsey, Charleston, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., Arthur G. Howe, Asst. U. S. Atty., Charleston, S. C., for defendants.

WILLIAMS, District Judge.

These two actions were brought in the State Court against the defendants and were removed to this court on the ground that the defendants were special agents of the Alcohol & Tobacco Tax Division of the United States Treasury Department, and were acting as such at the times mentioned in the complaints.

The complaints alleged that while the plaintiffs were on duty as officers of the Charleston County Police Department, the defendants as special agents of the Alcohol & Tobacco Tax Division of the

It is conceded in the briefs of both parties that judicial officers, quasi judicial officers, judges, prosecuting attorneys, executive and ministerial officials of the government are immune from civil suit for acts committed by them in the performance of their official duties. Yaselli v. Goff, 2 Cir., 12 F.2d 396; 56 A.L.R. 1239; Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Cooper v. O'Connor, 69 App.D.C., 100, 99 F.2d 135, 118 A.L.R. 1440; Gregoire v. Biddle, 2 Cir., 177 F.2d 579; Laughlin v. Garnett, 78 U.S.App.D.C. 194, 138 F. 2d 931.

In the case of Cooper v. O'Connor, 99 F.2d 135, the plaintiff brought an action for malicious prosecution against the Comptroller of the Currency of the United States, the Receiver of the Commercial National Bank of Washington, the General Counsel for the Division of Insolvent Banks of the Treasury Depart-

ment, the Deputy Comptroller of the Currency of the United States, the United States Attorney, an Assistant United States Attorney and a Special Agent of the Federal Bureau of Investigation for having appeared before a grand jury and falsely and maliciously accused plaintiff of having committed crimes in violation of the banking laws and thereby obtained indictments against him. After citing with approval Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239, affirmed 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, and Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780, which cases apply to the doctrine of immunity of judicial officers, the Court said [99 F.2d 142]:

> "Appellant seeks to avoid the effect of this widespread extension of the rule by pointing out that in some of the cases the rule of immunity—as applied to executive officers—was limited to heads of departments. Spalding v. Vilas, supra [161 U.S. 483, 16 S.Ct. 631, 40 L. Ed. 780]; Mellon v. Brewer, supra [57 App.D.C. 126, 18 F.2d 168, 53 A.L.R. 1519]. During recent years, however, a trend is definitely observable extending the application of the rule to minor executive officers. It is obvious that the effect of this trend is to cut down proportionately the scope of the general rule which makes officials liable for tortious injuries and which denies to them the immunity of the sovereign. It may be argued that if this trend is allowed to prevail, it will too greatly imperil the rights of the individual citizen. Just as it is the 'hard-boiled top-sergeant' who—in his interpretation of the orders of the high command—makes life miserable for the private in the rear rank, so it is the comparable minor official who—in civil life—is largely responsible for long-existing impressions in the minds of private citizens concerning 'the insolence of office.'

> "On the other hand, to hold that only the heads of departments should

be immune from liability under the rule would defeat its purpose. We know that heads of the Federal departments do not themselves engage in such activities as are here involved. Their administrative duties make such participation impossible. There must be, necessarily, delegation of authority for such purposes. When the act done occurs in the course of official duty of the person duly appointed and required to act, it is the official action of the department; and the same reason for immunity applies as if it has been performed by the superior officer himself. De Arnaud v. Ainsworth, supra [24 App.D.C. 167] at pages 177, 181 [5 L.R.A.,N.S., 163]; United States, to Use of Parravicino v. Brunswick, supra [63 App.D.C. 65, 69 F.2d 383]. To hold otherwise would disrupt the government's work in every department. 'Its head can intelligently act only through subordinates.' Farr v. Valentine, 38 App.D.C. 413, 420, Ann.Cas. 1913C, 821. The fact that our country has grown so great as to require a multiplication of governmental officials in some small measure proportionate thereto, cannot obscure the fact that the duties performed are the same as those once performed by heads of departments, and that fearless performance of official duty is as essential today as it was yesterday.

> "Therefore, we conclude that as the acts of appellees were performed in the discharge of their official duties, the motives with which those duties were performed are immaterial, and appellant's contention must fail."

Cooper v. O'Connor, supra, clearly holds that minor ministerial officers, such as the defendants, share the same cloak of immunity while acting within the scope of their authority.

Our own Fourth Circuit Court of Appeals, in a very able opinion by Chief

Judge John J. Parker, in the case of Papagianakis v. The Samos, 186 F.2d 257, 260, affirmed an opinion of District Judge Albert V. Bryan dismissing so much of a libel action against an immigration inspector which alleged that he unlawfully detained the plaintiff aboard a ship. In discussing the question of immunity, Judge Parker said:

"It has long been settled that judicial officers may not be held liable in damages for acts performed in the discharge of their duties. Randall v. Brigham, 7 Wall. 523, 535, 19 L.Ed. 285; Bradley v. Fisher, 13 Wall. 335, 350–351, 20 L.Ed. 646. Some of the older decisions drew a distinction between judicial officers and executive officers exercising quasi judicial functions, holding as to the latter that there was not absolute immunity but immunity only so long as they were not actuated by malice or other sinister motive. See Wilkes v. Dinsman, 7 How. 89, 130–131, 12 L.Ed. 618; Gould v. Hammond, 10 Fed.Cas. page 874, No. 5,638; Bailey v. Berkey, C.C., 81 F. 737 and cases there cited. See also Gibson v. Reynolds, 8 Cir., 172 F.2d 95. This distinction was repudiated, at least so far as heads of executive departments are concerned, in Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 637, 40 L.Ed. 780, where the court used language which in logical application would require that the rule of absolute immunity be applied to all officers of the government when exercising discretionary power in the line of official duty. The court said: 'We are of opinion that the same general considerations of public policy and convenience which demand for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of the performance of their judicial functions apply, to a large extent, to official communications made by heads of executive departments when engaged in the discharge of duties imposed upon them by law. The interests of the people require that due protection be accorded to them in respect of their official acts. * * * In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as intrusted to the executive branch of the government, if he were subjected to any such restraint. He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested. But if he acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals.'

"As noted above, the argument upon which the Supreme Court bases its decision in Spalding v. Vilas, supra, applies in principle in the case of other executive officers as well as heads of departments; and it was so applied in the case of a special assistant to the Attorney General in Yaselli v. Goff, 2 Cir., 12 F.2d 396, 403, 56 A.L.R. 1239, affirmed per curiam 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395. In this case Judge Rogers, speaking for the Court of Appeals of the Second Circuit, said: 'A public office is an agency for the state, the duties of which involve in their performance the exercise of some portion of the sovereign power, either great or small. The rule of responsibility of a public officer, as held by the courts, is said to be

that, if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an erroneous performance, is regarded as an injury to the public, and not as one to the individual. It is to be redressed in some form of public prosecution, and not by a private person who conceives himself specially injured. Cooley on Torts (3d Ed.) vol. 2, p. 756. In Thibodaux v. [Town of] Thibodaux, 46 La.Ann. 1528, 16 So. 450, it is said: "Officials in the performance of a duty imposed by law cannot be held in damages for acts done strictly within the lines of official duty." '

"In Cooper v. O'Connor, 69 App. D.C. [100] 108, 99 F.2d 135, 141, 118 A.L.R. 1440, Judge Miller, speaking for the Court of Appeals of the District of Columbia, traced the development of the doctrine of immunity of public officers for acts performed in the discharge of official duties and applied it in the case of minor executive officers who were not exercising even quasi judicial functions, saying:

" 'The rule as now declared in many cases has been applied, not only to officials judicial and quasi-judicial, but to executive officers generally, such as the Postmaster General, the Secretary and Assistant Secretary of the Treasury, Members of the United States Parole Board, the Parole Executive, the Warden of a Federal penitentiary, the Director of the Bureau of Prisons, the Commissioners of the District of Columbia, the Chairman of the Tariff Commission, a building inspector, the United States Commissioner of Indian Affairs, and the Chief of Record and Pension Office of the War Department.

" 'The reason now given for the rule is simply one of public policy. "Otherwise the perfect freedom which ought to exist in discharge of public duty might be seriously restrained, and often to the detriment of the public service." De Arnaud v. Ainsworth, 24 App.D.C. 167, 178, 5 L.R.A.,N.S., 163. See also, United States, to Use of Parravicino v. Brunswick, 63 App.D.C. 65, 68, 69 F.2d 383, 386. As was pertinently said in an English case: " * * * Does an action lie against a man for maliciously doing his duty? I am of the opinion that it does not; * * * ". Dawkins v. Paulet, L. R. 5 Q.B. 94, 114.'

"In Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581, the doctrine was applied to grant immunity from suit to a District Director of Immigration and a District Director of an Enemy Alien Control Unit as well as to the Attorney General in a suit in which plaintiff alleged malicious arrest and imprisonment and violation of the provisions of the Civil Rights Act. Judge Learned Hand, speaking for the court in that case, lays down the basis for the extension of the doctrine so clearly that nothing further need be said. Said he:

" 'It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.

" 'The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.' "

■ What is meant by the limitation that the officer's act was done within the scope of his duties to enable the officer to claim immunity? The plaintiff takes the position that if the complaint alleges that the officers committed acts which clearly would not be in line of duty, the officers, thereafter upon being sued for the acts, could not claim immunity. This clearly is contrary to the holding of our courts. In Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581, Judge Learned Hand appropriately states the rule as follows:

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *"

■ Another question which has been raised by the plaintiffs is that since the act was done maliciously, the defendants could not assert, when later sued, that the same was in line of duty and, therefore, could not claim immunity. The case of Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780, decided that the official was immune regardless of his personal motive and, therefore, the fact that the defendant alleged malice on his part was immaterial. In the case of Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, and many other cases, it is clearly held that maliciousness or wantonness cannot defeat immunity. The question was clearly stated in the case of Gregoire v. Biddle, 177 F. 2d 579, as follows:

" * * * is that it is impossible to know whether the claim is well

founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. * * *"

The question has been raised that the application of the principle of immunity fails to consider what redress a private citizen unjustifiably wronged by a public officer really has. The legal presumption is that a public officer acts within his authority and in accordance therewith. The correct rule is stated in Yaselli v. Goff, 2 Cir., 12 F.2d 396, 403, 56 A.L.R. 1239, as follows:

" * * * A public office is an agency for the state, the duties of which involve in their performance the exercise of some portion of the sovereign power, either great or small. The rule of responsibility of a public officer, as held by the courts, is said to be that, if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an erroneous performance, is regarded as an injury to the public, and not as one to the individual. It is to be redressed in some form of public prosecution, and not by a private person who conceives himself specially injured. * * *"

The opinion stated that officers are to " 'make an account to God and the King' " and that a contrary rule " 'would tend to the scandal and subversion of all justice.' "

▪ District Judge Gilliam in Sidbury v. Gill, D.C., 102 F.Supp. 483, 485, clearly states the principle of law involved as follows:

" * * * the functions of a public officer are exercised for the Government itself and not for the individual citizen. And a failure to perform such functions or an erroneous performance is regarded as an injury to the Government or general public, and not an injury to an individual. Hence, such injury is redressed in some form of public prosecution, and not by a private person who conceives himself specially injured."

▪ There is no allegation in either of the complaints that the defendants acted other than as Internal Revenue Agents. When the case was removed from the State Court to this Court, the verified petition of these defendants was to the effect that the acts complained of by the plaintiffs were done by them pursuant to the authority vested in them as Internal Revenue agents and, therefore, under color of law. These allegations have not been denied by the plaintiffs. This Court can consider, under the authority of De Busk v. Harvin, 5 Cir., 212 F.2d 143, 146, these petitions and the fact that the statements therein contained are not denied in determining whether or not the defendants acted within the scope of their authority. In the De Busk v. Harvin case, the Court stated:

" * * * The uncontroverted affidavits of appellees, attached as exhibits to the amended petition for removal, clearly reveal that appellant's dismissal by appellees was an 'act under color of * * * office', within the meaning of the removal statute."

In determining whether these defendants acted within the scope of their authority, the Court may properly take official notice of official duties of each and thus determine whether the acts charged fell within the scope of their authority. Cooper v. O'Connor, 99 F.2d 135, 139. This case held that, in determining this question:

"It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute (United States v. Birdsall, 233 U.S. 223, 230—

231, 34 S.Ct. 512, 58 L.Ed. 930); or even that they should be specifically directed or requested by a superior officer. Mellon v. Brewer, 57 App.D. C. 126, 129; 18 F.2d 168, 171, 53 A. L.R. 1519, certiorari denied, 275 U. S. 530, 48 S.Ct. 28, 72 L.Ed. 409. It is sufficient if they are done by an officer *'in relation* to matters committed by law to his control or supervision.' (Italics supplied.) Standard Nut Margarine Co. [of Florida] v. Mellon, 63 App.D.C. 339, 341, 72 F.2d 557, 559, certiorari denied, 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696); or that they have 'more or less connection with the general matters committed by law to his control or supervision.' (Italics supplied.) (Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780; and see Lang v. Wood, 67 App. D.C. 287, 288, 92 F.2d 211, 212); or that they are governed by a lawful requirement of the department under whose authority the officer is acting."

■ These defendants had a statutory duty to make the arrest of which the plaintiffs complain because any Internal Revenue Agent "who makes opportunity for any person to defraud the United States" or "who does or omits to do any act with intent to enable any other person to defraud the United States" is subject to dismissal from the service and to criminal prosecution. Section 4047 (e)(5, 6) of the 1939 Internal Revenue Code, 26 U.S.C.A. The very commission which these defendants hold as Internal Revenue Agents authorizes them not only to perform all duties conferred upon such officers under the laws administered by the Internal Revenue Service but, also, as to all matters relating to such laws and regulations.

■ It is quite clear that the defendants are entitled as a matter of law to immunity from the suits herein. It is, therefore,

Ordered that the complaints be dismissed.