**LAUGHLIN v. ROSENMAN et al.**

No. 9280.

United States Court of Appeals
District of Columbia.

Argued March 5, 1947.

Decided May 5, 1947.

Mr. James J. Laughlin, pro se.

Mr. J. Gregory Bruce, of Washington, D. C., of the Bar of the State of Kentucky, pro hac vice, by special leave of Court, with whom Messrs. George Morris Fay, U. S. Atty., and Sidney S. Sachs, Asst. U. S. Atty., both of Washington, D. C., were on the brief, for appellees.

Messrs. Edward M. Curran, U. S. Atty. at the time the record was filed, Daniel B. Maher, Asst. U. S. Atty., and John D. Lane, Asst. U. S. Atty., all of Washington, D. C., also entered appearances for appellees.

Before STEPHENS, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia dismissing the complaint of the appellant, hereinafter referred to as plaintiff, upon the ground that it fails to state a claim upon which relief can be granted. The complaint is in two counts, the first seeking damages for "malicious prosecution," the second for "interference with civil rights." The first count alleges, in substance and effect, that there was brought to the attention of the late President Franklin D. Roosevelt by the defendant Samuel I. Rosenman, the President's "confidential assistant" and "Special Counsel," a motion derogatory to the President filed by the plaintiff herein in a "so-called sedition case," in the District Court of the United States for the District of Columbia,[1] wherein the plaintiff in the instant case was counsel for one Noble; that this angered the President and that at his direction[2] Rosenman caused the defendant Francis Biddle, Attorney General of the United States, to "concoct a criminal charge" against the plaintiff; that thereupon Rosenman and Biddle and the defendant Oetje John Rogge, Special Assistant to Attorney General Biddle,[3] the defendant James V.

---

[1] United States v. McWilliams et al., Criminal No. 73086, D.C., 1944, 54 F. Supp. 791; Id., D.C., 1946, 69 F.Supp. 812.

[2] The count does not in terms allege that Rosenman acted at the direction of the President. It states that "as a result of a conversation between the late President Roosevelt and the defendant Rosenman the defendant Biddle was instructed to concoct a criminal charge against the plaintiff . . . ." But the count read as a whole implies that Rosenman was acting at the direction of the President, and the plaintiff's brief in this appeal confirms that this was what the plaintiff intended to allege. The brief

states that "at the behest of the late President Roosevelt . . . Rosenman set the machinery in motion to prosecute appellant [plaintiff]."

[3] Rogge is described in the complaint as a citizen of the United States who "had offices in the Department of Justice and was specially designated to prepare the so-called sedition case for trial." But in the plaintiff's brief in this appeal Rogge is described as "Special Assistant to Attorney General Francis Biddle." The trial court could take judicial notice of Rogge's official position (Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, certiorari denied 1938, 305 U.S. 643, 59

Bennett, Director of the Federal Bureau of Prisons, and the defendant Joseph W. Sanford, Warden of the United States Penitentiary at Atlanta, Georgia, all conspiring together and acting in concert to this directed end, by promises of leniency induced certain inmates of federal prisons, and, by plying him with liquor, induced one M. Edward Buckley, all approached and interviewed for the defendants by agents of the Federal Bureau of Investigation, to testify falsely against the plaintiff, the prison inmates before a grand jury in the United States District Court for the District of Maryland, and Buckley at a trial in the said District Court; that upon such false testimony of the prison inmates the plaintiff was by the grand jury on June 2, 1944, indicted for conspiring, contrary to the provisions of 35 Stat. 1113, ch. 321, § 135, Act March 4, 1909, 18 U.S.C.A. § 241, "to concoct a false alibi for one Hilliard Sanders . . . defendant by the plaintiff in 1942"; and that thereafter upon such charge the plaintiff was tried in the said District Court of Maryland and was acquitted. The count alleges that the plaintiff is a citizen of the United States and a legal and voting resident of the state of Indiana, temporarily residing in the District of Columbia, and that he is a member of the bar of the courts of the District of Columbia and of the bar of other courts.[4] It further alleges that by the aforesaid acts of the defendants he was damaged through impairment of professional standing, loss of business, and expense in defending against the criminal charge upon which, as alleged, he was indicted and tried. The count charges that "the testimony offered before the Grand Jury to bring about the indictment of the plaintiff was known by the defendants to be false and that each of the defendants knowingly, wilfully and maliciously participated in the unlawful conspiracy against the plaintiff. . . ." The count states that "All defendants are sued in their personal capacities."

The allegations of the second count of the complaint, charging the defendants with "interference with civil rights" of the plaintiff, are, in substance and effect, that the defendants named in the first count, conspiring together and acting in concert, maliciously attempted to deny to the plaintiff a fair and impartial trial of the criminal cause referred to in the first count. Specifically, it is alleged that the defendants endeavored "to prevent, impede and interfere with witnesses summoned on behalf of the plaintiff from testifying in the criminal trial," threatening them with punishment if they testified in his behalf and punishing those who did so testify, and on the contrary promising rewards to those who would testify falsely against the plaintiff and actually rewarding those who did so testify. The second count repeats the charge that M. Edward Buckley was induced to give testimony, known by the defendants to be false, against the plaintiff at the criminal trial. The second count is grounded by the plaintiff upon Rev.Stat.1878, §§ 1979, 1980, 8 U.S.C.A. §§ 43, 47. These sections provide as follows:

"Sec. 1979. Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Sec. 1980. . . .

"Second. If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or

---

S.Ct. 146, 83 L.Ed. 414), and it will be assumed for the purpose of this decision that it did so.

4 The count alleges that the plaintiff "is a member of the bar of the Courts of the District of Columbia, of Indiana, and of the Supreme Court of the United States as well as the Federal District Court for the District of Maryland, and the United States Circuit Court of Appeals for the Fourth and Fifth Judicial Circuits."

property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

"Third. . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

In the trial court, "Upon application by plaintiff for leave to amend, counsel for plaintiff and for defendants stipulated that the complaint be deemed amended to contain an allegation that the prosecution of plaintiff was without probable cause." The defendants so stipulating were Rosenman and Rogge, these alone being before the court. None of the other defendants was served or entered appearance, so far as the record shows. The amendment was allowed. The prayer of the complaint was for $100,000 damages against each of the defendants under each count. The dismissal of the complaint as amended was "with prejudice and without further leave to amend."

█ The ruling of the trial court that the complaint fails to state a claim upon which relief can be granted was made upon a motion to dismiss filed by the defendants Rosenman and Rogge. Under familiar procedure the trial court, for the purpose of passing upon the legal sufficiency of the complaint, assumed, without determining, the truth of the allegations thereof. For

the same purpose we likewise assume, without determining, their truth.

We discuss the question of the sufficiency of the complaint in terms of each of the counts separately.

█ *First count.* The sole question presented under this count is whether the rule of immunity from civil liability of a public officer for an injury suffered as a result of acts having "more or less connection with the general matters committed by law to his control or supervision," Spalding v. Vilas, 1896, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780, or as otherwise phrased, as the result of acts "done within the scope of the officer's duties as defined by law," Cooper v. O'Connor, 1938, 69 App.D.C. 100, 103, 99 F.2d 135, 138, 118 A.L.R. 1440, certiorari denied 1938, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414, is made inapplicable to the defendants in the instant case because, as alleged, they, from ulterior motives, knowingly and wilfully concocted false testimony against the plaintiff. This is the only question argued on the appeal either orally or in the brief of the plaintiff.[5] It is not asserted that the public offices which the several defendants are alleged to have occupied were not within the ambit of the rule of immunity, or that the several defendants did not occupy such offices at the time of the acts complained of. It is not asserted that the acts of procuring evidence and presenting the same to a grand jury and prosecuting a case upon which an indictment is returned are not within the class of acts which the Attorney General is empowered to perform or that the acts of permitting the interviewing of prison inmates by agents of the Attorney General for the purpose of procuring evidence are not within the scope of the official duties of the Director of the Bureau of Prisons and a warden of a federal penitentiary. It is not asserted that the act of transmitting to the Attorney General the directions of the President with respect to the procuring of evidence and presenting the same

---

[5] The "Statement of Point on Appeal" in the plaintiff's brief is in the following terms: "The sole question on appeal is whether officers of the United States who act from ulterior motives and knowingly and wilfully concoct false testimony can hide behind the cloak of immunity allowed Federal officials in the ordinary discharge of their duties."

to a grand jury is not within the course of duty of a "confidential assistant" and "Special Counsel" to the President, or that cooperating with the Attorney General, a Special Assistant to the Attorney General, and a warden of a federal penitentiary and the Director of the Bureau of Prisons in the procuring and presenting of evidence to a grand jury and in the prosecution of a criminal trial is not within the scope of the duties of a "confidential assistant" and "Special Counsel" to the President. Accordingly we rule on none of the questions which would be raised by such assertions.

The contention of the plaintiff that the rule of immunity of public officers from civil liability is inapplicable to the defendants in the instant case because they, as alleged, from ulterior motives, knowingly and wilfully concocted false testimony against him, is resolved against the plaintiff by the settled course of judicial decision. In Spalding v. Vilas, supra, where it was ruled that acts of the Postmaster General, defendant in that case, in calling, to the alleged injury of the plaintiff therein, the attention of postmasters who had made claims for readjustment of their compensation to the provisions of statutes relating to such business, were the kind of acts which by law the Postmaster General was authorized to do, it was held that he could not be subjected to civil liability "by reason of any personal motive that might be alleged to have prompted his action . . .." (161 U.S. at page 498, 16 S.Ct. at page 637, 40 L.Ed. 780) In Cooper v. O'Connor, supra, where it was ruled that acts of officials of the Treasury Department and of officials of the United States Attorney's Office in the District of Columbia, cooperating together, in presenting evidence to a grand jury and thereby causing three indictments to be returned charging the plaintiff in that case with violation of the banking laws of the United States and later, after an acquittal upon one of the indictments, causing a nolle prosequi to be entered upon the other two, were within the scope of their duties, it was held that "even the absence of probable cause and the presence of malice or other bad motive are not sufficient to impose" civil liability upon such officers. (69 App.D.C. at page 105, 99 F.

2d at page 140, 118 A.L.R. 1440) In Laughlin v. Garnett, 1943, 78 U.S.App.D.C. 194, 138 F.2d 931, certiorari denied 1944, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572, it was charged that the parties defendant, a United States Attorney and an Assistant United States Attorney for the District of Columbia, and a member of the Metropolitan Police Department of the District, had maliciously instigated a criminal prosecution on charges which they knew to be false, and had knowingly prepared and presented forged documents before a grand jury in order to obtain indictments against the plaintiff. It appears from the record in that case that it was alleged in the complaint that the United States Attorney "did send the defendant Baker [the police officer] to the District of Columbia Reformatory at Lorton, Virginia, and made request on various prisoners, who had been represented by the plaintiff, to make certain false charges against the plaintiff and if they did so, the defendant Baker assured them that he and the defendant Garnett [the United States Attorney] would see that their sentences were reduced or that they would be released outright." In the face of these allegations, which, it will be noted, substantially parallel those made in the first count in the instant case, dismissal of the complaint by the trial court for failure to state a claim upon which relief could be granted was held proper, again for the reason that the acts with which the defendants were charged, to wit, securing evidence and presenting the same to a grand jury and thereby procuring indictments, were part of the official duties of these officers. Cf. Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396, 56 A.L.R. 1239, affirmed per curiam, 1927, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, where a plea of immunity from civil liability was sustained in behalf of a Special Assistant to the Attorney General in the face of allegations and a contention similar to those made in the instant case. See also Lang v. Wood, 1937, 67 App.D.C. 287, 92 F.2d 211, certiorari denied 1937, 302 U.S. 686, 58 S.Ct. 48, 82 L.Ed. 530, where a similar plea was sustained at the instance of the Attorney General, the Director of the Bureau of Prisons, and the warden of a federal penitentiary, all charged with having acted il-

legally, maliciously and arbitrarily and without due process of law to cause false imprisonment of the plaintiff in that case.

The plaintiff cites Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. But in that case the Court dealt only with a question of jurisdiction as between federal and state courts. There was no ruling on the question whether or not a complaint which sought damages against federal officers for alleged illegal arrest, false imprisonment and unlawful search and seizure, stated a cause of action.

■ In view of the authorities above reviewed, the trial court in the instant case correctly held that the complaint of the plaintiff fails in the first count to state a claim upon which relief can be granted.

■ The application of the rule of immunity cannot be avoided by the allegation of the plaintiff that the defendants are sued in their personal capacities. Cooper v. O'Connor, supra.

■ Second count. Sections 1979 and 1980 of Revised Statutes, 1878, 8 U.S.C.A. §§ 43, 47, upon which the second count is based, do not support a cause of action based upon such facts as are alleged in that count. Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184, certiorari denied 1939, 306 U.S. 659, 59 S.Ct. 788, 83 L.Ed. 1056. The plaintiff in that case alleged that by virtue of a conspiracy on the part of a prosecuting attorney, his deputy, a superior court judge, two witnesses and a complaining witness, he was convicted of embezzlement on testimony known by such officials to be false, and that as a result he was obliged to relinquish his membership in the bar of the courts of a state and of a court of the United States. The Court of Appeals for the Ninth Circuit, ruling that no cause of action was stated, said, speaking through Wilbur, Circuit Judge:

"The federal statute relied upon (8 U.S. C.A. §§ 43, 47) was enacted in 1871 to enforce the rights granted by the Thirteenth and Fourteenth Amendments to the Constitution, U.S.C.A.Const. Amends. 13, 14. . . . The question then is whether or not a conspiracy to secure a conviction of a criminal offense in a court having jurisdiction thereof and of the defendant by knowingly using perjured testimony to convict an innocent person, is a conspiracy for the purpose of impeding the due course of justice in an attempt to 'deny to any citizen the equal protection of the laws'. It is only in case of a conspiracy to effectuate such a purpose that one damaged in his person or property, or deprived of his rights as a citizen of the United States, is entitled to maintain an action for damages in the federal courts under the statute. (8 U.S.C.A. § 47, supra).

"No such purpose was involved in the alleged conspiracy in the case at bar. Appellant was subjected to no greater hazard than any other individual in the state, namely, the hazard of being prosecuted for a crime and convicted by false testimony, and if the prosecuting officer of the county were sufficiently corrupt to use his high office for the purpose of convicting innocent people by perjured testimony, all the citizens within his jurisdiction would be subject to the same hazard.

"It is clear that conspiracy to deny the defendant due process of law is not a conspiracy to deny a person 'equal protection of the law', within the meaning of that phrase as used in the Fourteenth Amendment, U.S.C.A.Const. Amend. 14, and the act under consideration (8 U.S.C.A. § 47, supra). The two propositions are quite distinct. Tinsley v. Anderson, 171 U.S. 101, 106, 18 S.Ct. 805, 43 L.Ed. 91. The prohibition against 'denial of the equal protection of the law' was to prevent class legislation or action. It follows that the plaintiff has failed to state a cause of action within the terms of the federal statute (8 U.S.C.A. § 47, supra) upon which he relies. . . ." [Italics supplied] [100 F.2d at pages 186, 187]

So far as Section 1979 alone is concerned, the clear language thereof makes· unsupportable such a cause of action as is attempted to be stated in the second count in the instant case because it predicates the right to the relief which the section ·affords upon action taken "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .." It is not alleged in the second count that the conspirators acted under color of any such statute, ordinance, regulation, custom, or usage. Cf. Viles v. Symes, 10 Cir., 1942, 129 F.2d 828, ·831, certiorari denied 1942, 317 U.S. 633, 63 S.Ct. 67, 87 L.Ed. 511. The ruling in Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330, cited by the plaintiff, is inapplicable.

Judgment affirmed.