**Edward James KENNEY, Jr.,**
**Plaintiff,**

**v.**

**Joseph E. KILLIAN, Defendant.**

**Civ. A. No. 2310.**

United States District Court
W. D. Michigan, S. D.

June 29, 1955.

Edward James Kenney, Jr., Benton Harbor, Mich., in pro. per.

Alexander, Cholette, Buchanan, Perkins & Conklin and Paul E. Cholette, Grand Rapids, Mich., for defendant.

STARR, Chief Judge.

The motions before the court for determination are: (1) The defendant's motion for a judgment in his favor of no cause of action on the pleadings, and to dismiss the action; (2) the plaintiff's motion to strike such motion by the defendant; and (3) the plaintiff's motion for a summary judgment in his favor determining the legal liability of the defendant to respond in damages.

Plaintiff brings this action in pursuance of 8 U.S.C.A. § 43 (now 42 U.S.C.A. § 1983) and 28 U.S.C.A. § 1343, and in his complaint he alleges that he resides in Benton Harbor, Berrien county, Michigan, and is a member of the State bar of Michigan and engaged in the active practice of law; that the defendant Joseph E. Killian at the time of the oc-

currence of the events alleged in the complaint was the prosecuting attorney of Berrien county, Michigan; that the defendant in his capacity as prosecuting attorney on November 16, 1950, "approved and issued or caused to be approved and issued, a certain warrant or arresting document" in pursuance of Comp.Laws Mich. 1948, § 330.19 as amended by Act No. 313, Pub. Acts 1949, Stat.Ann.1953 cum. supp. § 14.809, and that by virtue of this warrant or arresting document the plaintiff was seized by officers of the sheriff's department of Berrien county and confined in the county jail for a period of about 40 hours; that during his arrest and confinement he was denied the right of counsel; that the defendant as prosecuting attorney was not justified in approving or authorizing his arrest or confinement by Comp. Laws Mich. 1948, § 330.19, as under that section a person could be arrested and detained in temporary protective custody only if he manifested homicidal or other dangerous tendencies; that plaintiff did not at any time exhibit such tendencies; that he was denied due process of law; and that the conduct of the defendant as prosecuting attorney constituted an invasion of the plaintiff's rights secured under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States, contrary to 42 U.S.C.A. § 1983. Plaintiff further alleges that as a result of his seizure and detention he has suffered physical and mental harm, exhaustion, shock, and humiliation, and has suffered and will suffer medical and hospital treatment and expense; and that he has suffered injury both temporary and permanent to his reputation as a member of the community and as a practicing lawyer. In his complaint the plaintiff asks for a judgment against the defendant for money damages in the amount of $20,000 plus punitive and exemplary damages of $5,000 and also costs and attorney fees. The plaintiff subsequently filed an amendment of his complaint reading in part as follows: "Paragraph nine is amended by adding the averment that this action also sounds in false imprisonment."

It appears from the files and records in this case that in the preparation and filing of his complaint the plaintiff was represented by Attorney Harold Norris of Detroit, Michigan. However, it further appears that Attorney Norris subsequently withdrew as attorney for plaintiff, and that the plaintiff's amended complaint and all later motions and briefs were prepared and filed by him acting in his own behalf.

The defendant filed answer denying that he issued a warrant or document for the arrest of the plaintiff; denying that the plaintiff was denied the right of counsel or the privilege of communicating with counsel; and alleging that the plaintiff was, in fact, permitted to communicate and did communicate and consult with his counsel. The defendant further alleges that on November 16, 1950, the sheriff of Berrien county, pursuant to Comp.Laws Mich. 1948, § 330.-19, sought and obtained the approval of the defendant as prosecuting attorney to take the plaintiff into temporary protective custody; and that such approval was given by the defendant with justifiable cause, as the plaintiff had in fact manifested homicidal and dangerous tendencies and the defendant had reason to believe that he was mentally ill and was manifesting homicidal and dangerous tendencies within the meaning of the provisions of Comp.Laws Mich. 1948, § 330.19, Stat.Ann. § 14.809, which provides in part as follows:

"No person arrested under this act shall be confined in a jail or other lock-up unless such person manifests homicidal or other dangerous tendencies: Provided further, That any peace officer of this state with the approval of the prosecuting attorney, obtained within 24 hours of the taking into custody and confinement, is hereby authorized to take into temporary protective custody and confine for a period of not to exceed 48 hours, not counting Sundays and legal holidays, any person

believed to be mentally ill manifesting homicidal or other dangerous tendencies; proceedings under this act; temporary or permanent, to be instituted by such peace officer within said 48 hour period, not counting Sundays and legal holidays."

At the hearing in open court on the motions of the parties now under consideration, there was put in evidence a copy of the written approval or authorization which the defendant as prosecuting attorney gave the sheriff of Berrien county relative to taking the plaintiff into temporary protective custody in pursuance of § 330.19 quoted above. This approval or authorization reads as follows:

"November 16, 1950

"Mr. Erwin H. Kubath, Sheriff
St. Joseph, Michigan

"Re: Edward J. Kinney, Jr.
849 Pipestone Street
Benton Harbor, Michigan

"Dear Sir:

"It has been represented to this office that the above person is insane and manifesting homicidal and other dangerous tendencies and therefore you are authorized to take such person into temporary protective custody and to confine him for a period of not to exceed 48 hours, not including Sundays and legal holidays, all as provided in Section 14.-809 of the Michigan Statutes Annotated, as amended (Comp.Laws Mich.1948, § 330.19 as amended).

"Yours very truly,
Joseph E. Killian
Prosecuting Attorney."

It appears that after the plaintiff had been detained in temporary protective custody for about 40 hours on November 16th and 17th, the probate court of Berrien county on November 18, 1950, determined and adjudged him to be mentally ill and committed him to the Kalamazoo State hospital, where he was confined until about August 17, 1952. However, from exhibits filed in the present action it appears that in a subsequent proceeding instituted by the plaintiff in the circuit court of Berrien county, an order or decree was entered in October, 1954, declaring his commitment to the State hospital on November 18, 1950, to be null and void.[1]

As affirmative defenses the defendant alleges: (1) That both plaintiff and defendant are citizens of Michigan and that, there being no diversity of citizenship, this Federal court is without jurisdiction of the parties or the subject matter of the action;[2] (2) that the allegations of the complaint do not state a claim upon which relief could be granted; and (3) that all acts alleged to have been done by the defendant in connection with the taking of plaintiff into temporary protective custody were performed by the defendant as a public officer acting within the scope of his official authority and discretion and in the course of his official duties as prosecuting attorney, and that as prosecuting attorney he is immune from legal liability to the plaintiff for the acts complained of. As a further affirmative defense the defendant alleges that plaintiff's action is in form and substance an action for false imprisonment and for malicious prosecution and is barred by the Michigan statute of limitations, being Comp.Laws Mich. 1948, § 609.13, subd. 3, which provides among other

1. It appears that in another civil action pending in this court by plaintiff Edward James Kenney, Jr., against Malcolm K. Hatfield, probate judge of Berrien county, and Dr. Roy A. Morter, medical superintendent of the Kalamazoo State hospital, and others, being Civil Action No. 2415, plaintiff Kenney has asserted a claim under the civil rights statutes against Judge Hatfield who committed him to the State hospital and against Dr. Morter and others, for money damages by reason of his commitment to the hospital and his detention and alledged false imprisonment in the hospital. [See 132 F.Supp. 814.]

2. It is admitted that the plaintiff and defendant are both residents and citizens of the State of Michigan and that there is no diversity of citizenship in the present case.

things that actions for false imprisonment and for malicious prosecution shall be brought within two years from the time the cause of action accrues, and not afterwards. The defendant denies that plaintiff is entitled to recover either ordinary or punitive damages in the present action.

Plaintiff bases Federal-court jurisdiction of the present action on 28 U.S.C.A. § 1343 as amended, which provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

"(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

Plaintiff bases his right to recover in the present action on 8 U.S.C.A. § 43 (now 42 U.S.C.A. § 1983), which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ In his complaint in the present case the plaintiff alleges that his arrest on November 16, 1950, and his detention in the Berrien county jail in temporary protective custody was in deprivation of his rights, privileges or immunities secured by the Constitution and Federal laws. Therefore, it is clear that under § 1343 hereinbefore quoted this court has jurisdiction of the present action. See Ortega v. Ragen, 7 Cir., 216 F.2d 561; McShane v. Moldovan, 6 Cir., 172 F.2d 1016; Bottone v. Lindsley, 10 Cir., 170 F.2d 705.

The plaintiff alleges that on November 16, 1950, the defendant caused officers of the sheriff's department of Berrien county to seize him, and that said officers confined him in the county jail for approximately 40 hours. The complaint was filed and summons issued in the present action November 10, 1953, which was approximately two years and 358 days after his confinement in the Berrien county jail on November 16, and 17, 1950. In the amendment of his complaint plaintiff alleges in effect that his present action is for false imprisonment. The applicable Michigan statute, Comp. Laws Mich.1948, § 609.13, subd. 3, provides: "Actions * * * for false imprisonment, for malicious prosecution * * * shall be brought within 2 years *from the time the cause for action accrues,* and not afterwards".

■■ It is clear that if the plaintiff had a cause of action against defendant for false imprisonment, such cause of action *accrued* upon his arrest and confinement for about 40 hours in the Berrien county jail on November 16, and 17, 1950. Hence, his cause of action, if any, accrued nearly three years prior to his filing complaint in the present case. Therefore, it is obvious that his present action is barred by the Michigan two-year statute of limitations, as the time for filing an action under the Federal civil rights act is controlled by the ap-

plicable State statute of limitations. See Wilson v. Hinman, 10 Cir., 172 F.2d 914; Gordon v. Garrson, D.C., 77 F.Supp. 477.

■ The plaintiff's contention that his alleged tort claim against the defendant was continuing in character and included the period of his subsequent confinement in the Kalamazoo State hospital, is wholly without merit, as his detention in the Berrien county jail for 40 hours was only for his temporary protective custody under the applicable State statute, Comp.Laws Mich.1948, § 330.19, hereinbefore quoted. Furthermore, the defendant as prosecuting attorney had no reason to expect that in the subsequent probate-court proceedings the probate judge would make an illegal commitment of plaintiff to the State hospital. He had the right to assume that the proceedings in probate court would be regular and proper. See Nash v. Mayne, 340 Mich. 502, 65 N.W.2d 844. Therefore, the plaintiff's subsequent confinement in the Kalamazoo State hospital under commitment by the probate court was not a continuation of the action of the defendant in connection with his being taken into temporary protective custody on November 16, 1950.

It should be noted that plaintiff makes no claim that the running of the State statute of limitations was tolled by his insanity when his cause of action accrued on November 16, and 17, 1950. Comp. Laws Mich.1948, § 609.15, provides:

"If any person entitled to bring any of the actions mentioned in this chapter [which includes false imprisonment] shall, at the time *when the cause of action accrues,* be within the age of 21 years, insane, or imprisoned in the state prison, such person may bring the action within the times in this chapter respectively limited, after the disability shall be removed."

■ At the time of his confinement in temporary protective custody by the sheriff on November 16, and 17, 1950, the plaintiff was over 21 years of age and was not confined in a State prison.

He is presumed to have been sane until he was subsequently on November 18, 1950, adjudged to be mentally ill. Furthermore, plaintiff makes no claim that he was mentally ill or insane at the time he was held in temporary protective custody. In fact, in his complaint in this action and in his complaint in his above-mentioned Civil Action No. 2415 pending in this court, he contends in effect that he was sane and that he did not manifest any indication of insanity or of homicidal or dangerous tendencies at the time he was taken into temporary protective custody on November 16, 1950, or at the time of his subsequent commitment by the probate court to the State hospital. Therefore, it is clear that plaintiff was not insane within the meaning of § 609.15 quoted above at the time his cause of action accrued on November 16, and 17, 1950. In 34 Am.Jur. § 203, page 163, it is stated:

"As a general rule, in order to suspend the running of the statute of limitations, the disability of incompetency must exist at the time of the accrual of the cause of action."

The court accordingly finds: (1) That plaintiff's alleged cause of action, if any, against the defendant as prosecuting attorney, accrued at the time he was taken by the sheriff and held in temporary protective custody for about 40 hours on November 16, and 17, 1950; (2) that he was not insane within the meaning of the State statute, § 609.15, at the time his cause of action accrued; (3) that he did not begin the present action until nearly three years after his cause of action accrued; and (4) that his present action is barred by the Michigan two-year statute of limitations.

■ In his motion for judgment in his favor of no cause of action on the pleadings and to dismiss, the defendant further contends that the plaintiff's complaint does not state a claim upon which relief could be granted under the Federal civil rights statutes. I believe that I should also consider this contention by the defendant, as under the alleged facts involved in the present action such con-

tention raises an important issue as to the liability of public officials generally for damages in connection with their official acts. In considering this contention the court must assume the truth of the material and well-pleaded allegations of the plaintiff's complaint and amendment thereof. The plaintiff bases his present action on the Federal civil rights statutes. However, it must be kept in mind that such statutes give a right of civil action only for deprivation of rights, privileges, and immunities secured by the Constitution and Federal laws. Therefore, to maintain his present action under the civil rights statutes, the plaintiff must allege facts showing that the defendant's acts and doings as prosecuting attorney did deprive him of rights, privileges, and immunities secured by the Constitution and laws of the United States.

Comp.Laws Mich.1948, § 330.19, provides in part:

"Any peace officer of this state with the approval of the prosecuting attorney, obtained within 24 hours of the taking into custody and confinement, is hereby authorized to take into temporary protective custody and confine for a period of not to exceed 48 hours, not counting Sundays and legal holidays, any person believed to be mentally ill manifesting homicidal or other dangerous tendencies".

In the present case the defendant, acting as prosecuting attorney and in pursuance of the above State statute, authorized the sheriff of the county as a peace officer to take the plaintiff into temporary protective custody, and the sheriff took the plaintiff into temporary protective custody and held him for about 40 hours. No provision of the Federal Constitution or amendment thereof guarantees the plaintiff against being taken into protective custody by a peace officer of Michigan acting in pursuance of the applicable State statute.

In Screws v. United States, 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, the court said: "The problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under 'color of any law.'" See also Ortega v. Ragen, 7 Cir., 216 F.2d 561; Mueller v. Powell, 8 Cir., 203 F.2d 797. In Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242, at page 248, certiorari denied 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618, the court said:

"The Federal Constitution does not guarantee a citizen against loss through fictitious or fraudulent litigation or through erroneous decisions of State courts on questions of State law nor, as we have seen, does it guarantee uniformity of decisions on the part of State courts nor protect the citizen against the invasion of private rights by private parties."

In Bottone v. Lindsley, 10 Cir., 170 F. 2d 705, 707, the court stated:

" 'The Fourteenth Amendment did not alter the basic relations between the States and the national government.' Screws v. United States, supra, 325 U.S. at page 109, 65 S.Ct. at page 1039, 89 L.Ed. 1495, 162 A.L. R. 1330. Nor does it 'assure uniformity of decisions or immunity from merely erroneous action. * * *' See Justice Frankfurter concurring in Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497. See also Moyer v. Peabody, supra [212 U.S. 78, 29 S.Ct. 235, 53 L.Ed. 410]."

In the case of Whittington v. Johnston, 5 Cir., 201 F.2d 810, 812, the court said:

"If plaintiff's contentions are correct, then one who invokes the jurisdiction of a state court in a lunacy proceeding acts at his peril, and becomes liable under 8 U.S.C.A. § 43 in the event it turns out that the statute under which the court acts, or the procedure followed by the state officers in administering it, do not satisfy the requirements of due process. To hold the defendants li-

able in such circumstances would impose upon them a vicarious liability not contemplated by 8 U.S.C.A. § 43. That statute does not require those who regularly institute a lunacy proceeding under a state statute to stand sponsor for the validity of the statute, nor for the acts of the state officers in administering it.

"Plaintiff alleges that in instituting the lunacy inquisition, the defendants acted willfully and maliciously. But this adds no strength to the complaint under 8 U.S.C.A. § 43. Neither the Fourteenth Amendment nor the Civil Rights Acts purport to secure a person against unfounded or malicious lunacy proceedings. If the facts here involved make out a case of false arrest or malicious prosecution, the redress of such wrongs is left with the states. Compare Lyons v. Weltmer, 4 Cir., 174 F.2d 473; McCartney v. State of West Virginia, 4 Cir., 156 F.2d 739."

In Smith v. Israel, D.C., 110 F.Supp. 425, 426, the court quoted with approval from In re Huse, 9 Cir., 79 F. 305, as follows:

" 'It is within the province of the state legislature to determine the method of procedure that should be followed in procuring the confinement of persons who have become insane to such an extent as to render them dangerous to the community, or to themselves, to be at large. If the steps provided for by the statute of the state have not been followed, the redress of persons who have been improperly confined without warrant or authority of law is by application to the courts of the state. The federal courts ought not, except in extreme cases, if at all, be called upon to interfere. * * * It was never intended by congress that the courts of the United States should * * * obstruct the ordinary administration of the criminal laws, or

laws relating to the confinement of insane persons, through its own tribunals.' "

See also Harvard Law Review, vol. 68, May 1955, pages 1229–1240.

 The plaintiff in the present action bases his claim for money damages against the defendant as prosecuting attorney on the civil rights statute, 42 U.S.C.A. § 1983, hereinbefore quoted. This statute was originally enacted by the Congress in the turbulent days of reconstruction following the Civil War. Since then it has remained in a rather dormant state and has not been substantially revised or modified. It is only in comparatively recent years that resourceful plaintiffs and lawyers have invoked this statute as a basis for civil actions for money damages against public officials acting in the course of their official duties. Although the statute remains on the books and in force, it certainly seems clear that the Congress by its enactment in the reconstruction period never intended that it should be used as a basis for civil actions for damages against judges, prosecuting attorneys, sheriffs, prison wardens, and other public officers acting in their official capacities, in good faith and in pursuance of State law. See Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Francis v. Lyman, 1 Cir., 216 F.2d 583; Ginsburg v. Stern, D.C., 125 F.Supp. 596, affirmed 3 Cir., 225 F.2d 245, by the Court of Appeals for the Third Circuit. The court accordingly holds that the alleged acts and doings of the defendant as prosecuting attorney of Berrien county did not deprive the plaintiff of any rights, privileges or immunities guaranteed to him by the Constitution of the United States and amendments thereof. Therefore, as plaintiff's complaint fails to show that he has suffered the deprivation of a Federal right, privilege or immunity, his complaint fails to state a claim upon which relief could be granted under the civil rights statutes.

Defendant Killian as prosecuting attorney of Berrien county was a public of-

ficial of the State of Michigan and was acting under color of State law. In his motion for judgment of no cause of action in his favor on the pleadings and to dismiss, the defendant states in part:

"It affirmatively appears from the pleadings in this case that the defendant, Joseph E. Killian, at the time of the acts complained of was a public officer acting within the scope of his official authority and in the line of his official duty without wilfulness, malice or corruption, and under the facts alleged in the complaint he is immune from any civil liability for the acts complained of."

In discussing the immunity of public officials in the case of Dunn v. Estes, D. C., 117 F.Supp. 146, the court said at page 148:

"It is crystal clear that certain public officials, at least those exercising quasi-judicial functions, acting within the sphere of their duties enjoy the same absolute privilege as judges and the reason for the policy is, as Judge Hand states in Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 580, 581, to permit public officers to act unflinchingly in the discharge of their duties and without a constant dread of retaliation."

The case of Eaton v. Bibb, 7 Cir., 217 F.2d 446, was a consolidation of two cases instituted by the plaintiff under the civil rights statutes. In the second case the defendants were the State's attorney for Rock Island county, Illinois, the sheriff and deputy sheriff of the county, and an agent of the Federal bureau of investigation. In sustaining the district court's dismissal of the complaints in these actions, the court said in part, page 448:

"In [Case] No. 11233, the defendant King was the state's attorney at Rock Island, Illinois, where the trial of plaintiff was held. This Court decided in Cawley v. Warren, [7 Cir.] 216 F.2d 74, that a state's attorney was a judicial officer of the State of Illinois and while acting in his official capacity was immune from civil liability under the Federal Civil Rights Act. * * *

"Laughlin v. Rosenman, 82 U.S. App.D.C. 164, 163 F.2d 838, is a leading case declaring that prosecuting officials are not to be amerced by actions under the Federal Civil Rights Act for their actions in connection with official prosecutions even though it is alleged that such acts were done maliciously. In the Laughlin case it was specifically charged that the prosecuting officials acted without probable cause and for the purpose of prosecuting the defendant whom they knew to be innocent. The court there stated in 82 U.S.App.D.C. 164, 163 F.2d at page 842: 'The contention of the plaintiff that the rule of immunity of public officers from civil liability is inapplicable to the defendants in the instant case because they, as alleged, from ulterior motives, knowingly and wilfully concocted false testimony against him, is resolved against the plaintiff by the settled course of judicial decision.' "

In the case of Cawley v. Warren, 7 Cir., 216 F.2d 74, 75, the plaintiff began an action for damages against the State's attorney of LaSalle county, Illinois, and the first assistant State's attorney of that county and the foreman of the county grand jury, charging that they conspired to deprive her of her constitutional rights. In sustaining the dismissal of the action the appellate court said:

"The motion to dismiss the complaint states, *inter alia*, that the alleged actions charged against the defendants were done in their official capacities, wherefore they are not amenable to suit under the civil rights act. In this court the defendants likewise contend that they are immune from a suit of this kind.

"The law supports this claim of immunity. It extends to and includes judges, prosecuting attorneys and members of a grand jury.

"In Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, at page 29, 58 L. Ed. 142, involving a judge, at page 144 the court said:

" ' * * * we regard it as fundamental that the immunity of the defendant [the State's attorney] from this suit is the same as that of judges in the United States, which is established beyond dispute. Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646; Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285.' "

See also 43 Am.Jur. § 274, page 86.

It appearing that the acts of the defendant of which the plaintiff complains were performed by the defendant in the good-faith exercise of his discretion as prosecuting attorney and were performed within the scope of his statutory authority, the court accordingly holds that under the alleged facts and circumstances, and the well-established rules of law, the defendant is immune from civil liability to the plaintiff under the Federal civil rights statutes.

In summary, the court concludes: (1) That the plaintiff's present action is barred by the Michigan two-year statute of limitations; (2) that the plaintiff's complaint fails to state a claim upon which relief could be granted against the defendant under the Federal civil rights statutes; and (3) that the defendant is immune from civil liability to the plaintiff under the Federal civil rights statutes.

For the reasons which I have stated the defendant's motion for a judgment in his favor of no cause of action on the pleadings, and for dismissal of the action is granted, and judgment will be entered accordingly.

In view of the court's conclusions the plaintiff's motion for a summary judgment determining the defendant's liability to respond in damages is denied.