Leonard A. GAMAGE, Plaintiff,

v.

James A. PEAL, M.D. et al., Defendants.

Civ. No. 8373.

United States District Court
N. D. California, N. D.
Sept. 4, 1962.

these defendants were, at all times relevant to this action, members of the United States Air Force stationed at Travis Air Force Base, and that they claim right, title and authority under the laws of the United States respecting the armed forces thereof relative to the allegations of the complaint. 28 U.S.C.A. § 1442(a). The right to removal is not dependent upon the allegations of the complaint, but rather depends upon the facts stated in the verified petition to remove. See, Virginia v. Paul, 148 U.S. 107, at 122, 13 S.Ct. 536, at 541, 37 L.Ed. 386; Brann v. McBurnett, D.C., 29 F.Supp. 188. The state court in Solano County is in the Northern Division of this District. The removal procedures employed were proper, and the entire case may now proceed as if it had been originally commenced in this Court. 28 U.S.C.A. § 1442(a).

The defendant, James A. Peal, M.D., was served after the petition for removal was filed. Although plaintiff does not raise the issue, defendant Peal is stated in defendants' briefs to be a civilian psychiatrist under contract with the United States Air Force, and he is properly before this Court for the motions with which we are concerned. No defendants other than the four hereinabove mentioned have been served in this action.

The defendants served have moved to dismiss the complaint for failure to state a claim upon which relief may be granted. The plaintiff has moved to remand the case to the state court.

■ In considering a motion to dismiss, the allegations contained in the complaint must be regarded as true. Bershad v. Wood, 9 Cir., 290 F.2d 714. In his verified complaint plaintiff, a commissioned officer in the United States Air Force, alleges that he was "ordered" by his commanding officer to report to Black and White Hospital[2] for the pur-

Belli, Ashe & Gerry, San Francisco, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for defendants.

MacBRIDE, District Judge.

Plaintiff brought this action against the various defendants, named and fictitious, in the Superior Court of the State of California, in and for the County of Solano, (captioned as above and numbered 36268 therein) for money damages on account of torts allegedly committed by defendants against plaintiff.[1]

■■ The United States Attorney, upon direction of the Attorney General of the United States, filed a verified petition on behalf of defendants Arthur A. Reiss, M.D., Marlan L. Rhame, Jr., M.D., and Robert C. Pfeiler, M.D., to have the action removed to this Court on the grounds that

1. Plaintiff has also filed an action in this Court against the United States, 217 F. Supp. 381 under the Federal Tort Claims Act, based substantially upon the same series of events as alleged in this action.

2. It appears from the complaint, the verified petition for removal, and the briefs submitted, that Black and White Hospital is the Travis Air Force Base Hospital, operated by the United States Air Force, and that, defendant, Black and White Hospital, Inc., is actually the United States of America.

pose of being examined for an automobile operator's license clearance; that upon reporting to the hospital, the defendant-doctors undertook to examine, diagnose, treat, care for, and apparently hospitalize plaintiff in an allegedly tortious manner (Counts I and II); and that subsequently a "Medical Board Report" containing allegedly defamatory statements was prepared and communicated to the Air Force Physical Evaluation Board during a hearing (Count IV).

It is also alleged that Dr. Peal made a false statement to the Board concerning the date of his examination of plaintiff. (Count V). In Count III plaintiff alleges the examination, treatment and detention were part of a conspiracy between his commanding officer and the various defendants; that "they knew or should have known that plaintiff was not mentally ill at that time, and never was mentally ill," and that the examination, treatment and detention were "for the sole and wrongful purpose of causing plaintiff to be relieved from active duty and retired on a medical disability based upon alleged mental illness." Plaintiff further alleges that the conspiracy was "for the purpose of furthering their [defendants'] own ends * * * [and] wilful and malicious in nature." The defamation is alleged to have been malicious and the false statement is alleged to have been made "with knowledge of the falsity thereof and with the intention of fraudulently influencing the determination of said Travis Air Force Base Physical Evaluation Board. * * *" Although the complaint alleges negligence generally, the plaintiff, on page 4 of his motion to remand, classes the action as one in intentional tort.

Plaintiff alleges in Paragraph IV of his first count that Sixth Doe, Seventh Doe and Eighth Doe were acting within the course and scope of their employment. In Paragraph VIII of Count I it is alleged that defendants Jones, Peal and Does One through Five, inclusive, were acting "outside the scope of official duties" and that their actions constituted "a breach of discretion." The same allegation is made in Count III, Paragraph 4, adding defendants Williamson and Does Nine and Ten. There is no additional reference to "scope of duty" of any of these defendants contained in Counts II, IV or V. Nowhere in his complaint does plaintiff charge defendants Reiss, Rhame or Pfeiler with action exceeding the scope of their duties or constituting a breach of discretion, nor does the complaint contain any allegations concerning the nature of the acts performed by any of the other defendants. The fact that plaintiff has failed to charge defendants, Reiss, Rhame and Pfeiler, with conduct exceeding the scope of their duties does not eliminate the necessity, on a motion to dismiss, for examining their conduct to determine whether or not they were in fact so acting when they committed the allegedly tortious acts with which they are charged by plaintiff. See, Hughes v. Johnson, 9th Cir., 305 F. 2d 67. If they were in fact acting within the scope of their official duties at the time of these alleged acts, then plaintiff's complaint is fatally defective as hereinafter discussed.

■ The scope of official duties of Federal employees and whether certain acts are within the course and scope of such duties is entirely a question of Federal law. Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454; Preble v. Johnson, 10 Cir., 275 F.2d 275.

■ Although plaintiff alleges some of the defendants were acting outside the scope of their official duties, as noted above, this Court can and does find that, as a matter of law, from the pleadings and affidavits before this Court, that all of the defendants who have been served were acting within the course and scope of their authority and duties. Howard v. Lyons, supra; Bershad v. Wood, supra; O'Campo v. Hardisty, 9 Cir., 262 F.2d 621; De Busk v. Harvin, 5 Cir., 212 F. 2d 143; Hartline v. Clary, D.C., 141 F. Supp. 151. In Cooper v. O'Connor, (69 App.D.C. 100, 99 F.2d 135) the Court stated, at page 139:

"It is not necessary—in order that acts may be done within the scope

of official authority—that they should be prescribed by statute; or even that they should be specifically directed or requested by a superior officer. It is sufficient if they are done by an officer *'in relation* to matters committed by law to his control or supervision'; or that they have *'more or less connection* with the general matters committed by law to his control or supervision'; or that they are governed by a lawful requirement of the department under whose authority the officer is acting." [Citations omitted].

The above language was adopted by the Ninth Circuit in Bershad v. Wood, supra, at p. 717.

Certainly, in examining, diagnosing, counseling and treating a member of the military who is assigned to a command, the health and safety of which is the responsibility of the defendants as medical officers or as a medical contractee, the said defendants are performing acts which are directly related to the matters committed by law to their supervision and control. This is no less so in connection with the "Medical Board Report" prepared and communicated to the Air Force Physical Evaluation Board by the defendants.

Mistaken, erroneous or even tortious conduct does not, in itself, take such conduct outside the scope of duty of the actors. Bershad v. Wood, supra; Taylor v. Glotfelty, 6 Cir., 201 F.2d 51; Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838; Cooper v. O'Connor, supra.

The acts complained of being within the course and scope of defendants' duties and authority, the defendants served are immune from actions for money damages arising from such acts. The rule supporting this finding is well established. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Howard v. Lyons, supra; Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Hughes v. Johnson, supra; Bershad v. Wood, supra;

Preble v. Johnson, supra; De Busk v. Harvin, supra; O'Campo v. Hardisty, supra; Gregoire v. Biddle, 2 Cir., 177 F.2d 579; Waterman v. Nelson, 2 Cir., 177 F.2d 965; Fletcher v. Wheat, 69 App. D.C. 259, 100 F.2d 432; Cooper v. O'Connor, supra; Hartline v. Clary, supra; Carson v. Behlen, D.C., 136 F.Supp. 222.

The fact that plaintiff reported to the Travis Hospital only for the purpose of being examined for automobile operator's clearance and that the examination and resultant treatment may have extended far beyond what was originally contemplated by either the plaintiff, the examining doctor, or for that matter plaintiff's Commanding Officer, does not destroy the immunity to which the defendants are entitled. The scope and extent of the examination and thereafter the resultant treatment and the report covering plaintiff's condition were all within the discretion of the examining doctors and were matters properly within their supervision and control. Air Force Regulations 35–4, Chapter 2.[3] The Commanding Officer of an Air Base and the Medical Officer serving under him are charged with the responsibility of maintaining the health and safety of all persons in the command. Air Force Reg. 35–4. The deficient mental or physical condition of one man, particularly if he is a flying officer, could easily endanger the health and safety of other personnel on the Base. It would be not only the right, but more importantly the duty of a Commanding Officer, through his Medical Officers, to investigate completely the mental and physical condition of a person under the command, and if deemed necessary, to administer treatment to that person, if the examining doctor has reason to believe the person is physically or mentally unfit to perform his own duties. This would be proper regardless of the circumstances or occasions under which the Commanding Officer or his Medical Officers came upon the information that a person within the command might be physically or mentally de-

3. Air Force Rules and Regulations have the force and effect of law and are judi-

cially noticed. Cooper v. O'Connor, supra.

ficient. This rule may seem drastic and severe, but the responsibilities of a military commander are equally so; to rule otherwise would deprive our military arm of the efficiency and discipline that is necessary to the accomplishment of its purposes.

There is nothing in the complaint to indicate that defendants did other than follow Air Force Regulations once the initial examination of plaintiff commenced. The plaintiff states that his case was diagnosed and prognosed against his objections and consent and that he was prescribed for, cared for, medically advised and counseled and treated professionally, all without his consent. But there is no statement that he actually refused anything that was offered to him or offered to be done for him, nor is there any indication that he attempted to invoke the provisions of Air Force Regulations 160–35: 33.[4] It is to be particularly noted that nowhere in the complaint does plaintiff assert that Air Force Regulations were not followed. Because there is nothing in the record requiring a contrary finding, this Court shall presume that the officers obeyed the regulations by which they are controlled and that the "Medical Board Report" referred to in the fourth count of plaintiff's complaint was properly prepared and submitted in conformance with Air Force Regulations. Cooper v. O'Connor, supra. That no consideration can be given to the motive behind the preparation and submission of the report is dealt with later in this decision.

The policy underlying the rule of immunity is that government officials owe their duty to the public at large and the Government and not to the individual citizen. Hartline v. Clary, supra. If the act complained of is within the scope of an official's duties as defined by law, he should not be subjected to the harassment of civil litigation. Cooper v. O'Connor, supra. The following excerpt from Judge Learned Hand's Opinion in Gregoire v. Biddle, supra, at page 581, has been quoted and approved by the United States Supreme Court[5] and the Court of Appeals for the Ninth Circuit:[6]

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the

---

4. AFR 160–35: 33. "DISPOSING OF A PERSON WHO REFUSES PROFESSIONAL CARE. A medical board (convened under paragraph 21) will examine any person in the military service who refuses to submit to medical treatment, surgical operation, or diagnostic procedure. If the person bases his refusal on religious grounds, the medical commander will appoint a chaplain as an additional member of the board. The board must decide whether the patient needs the treatment advised in order to perform his military duties properly, and whether the treatment can normally be expected to produce the desired result. When the decision on both points is affirmative, the person will be so advised. If he still refuses, he may be tried by court-martial. Whether or not disciplinary action is taken, the unit commander may initiate whatever action is appropriate, such as discharge, retirement, etc. However, before doing so, he will refer the case to the Surgeon General, USAF, for consideration and review. NOTE: When emergency treatment, surgery, or diagnostic procedures are required to preserve the life or health of the patient, they may be performed with or without his permission. The same is true when a diagnostic procedure or treatment is necessary to protect the life or health of a patient declared mentally incompetent by a qualified psychiatrist."

5. Barr v. Matteo, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434.

6. Bershad v. Wood, 9 Cir., 290 F.2d 714, 717–718.

inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *"

Thus the wrongs committed by negligent or dishonest officials are more properly the subject of governmental sanction and not personal redress by the private party injured. Hartline v. Clary, supra.

In this case we are talking about a particular segment of the Government, the military, where the reason for the rule would seem to be most applicable. In the military the sanctions of court-martial and others exist to redress the wrongs committed by military officials.[7] To allow the fear or risk of personal liability for their official acts to inhibit military doctors from performing their duty and from going forward and pursuing findings that might result in a determination of the unfitness of a flyer in today's Air Force would be contrary to the national interest. Such action would result in endangering the lives of the men and the public; it would hamstring the efficient operation of our Air Force; and would, therefore, have the effect of allowing the interest of the wronged individual to override the needs of the Government and the public, which is contrary to the whole purpose of the immunity rule.

■ The status of Dr. Peal as a contract psychiatrist for the Air Force does not exclude him from the protection of the immunity rule herein announced. His functions are the same as the military doctors, and he must abide by the same Air Force regulations. As a contract psychiatrist he performs as an official of the United States. He would be a "Federal employee" for the purpose of establishing the liability of the United States under the Federal Tort Claims Act (28 U.S.C.A. § 2671), and he certainly performs both discretionary and quasi-judicial functions as an employee of the government when he participates in the activities of the Medical Board and Physical Evaluation Board referred to in Counts IV and V of plaintiff's complaint. Additionally, it is to be noted that plaintiff does not resist the

7. See, e. g., Uniform Code of Military Justice, Chapter 47, Title 10, United States Code Annotated, particularly §§ 893 and 907 thereof.

consideration of any of the persons served herein as being officials of the United States for purposes of determining the application of the immunity rule.[8]

Nor can the immunity to which these defendants are entitled be destroyed by proof of their own malice or ulterior motives in their performance of acts which this Court holds to be within the course and scope of their duties and authority. Barr v. Matteo, supra; Spalding v. Vilas, supra; Hughes v. Johnson, supra; Bershad v. Wood, supra; De Busk v. Harvin, supra; Gregoire v. Biddle, supra; Taylor v. Glotfelty, supra; Waterman v. Nelson, supra; Laughlin v. Rosenman, supra; Cooper v. O'Connor, supra; Hartline v. Clary, supra. In Cooper v. O'Connor, supra, the complaint was found to be insufficient when it alleged that defendants acted maliciously and without probable cause. In Bershad v. Wood, supra, the complaint alleged that the defendants acted "willfully, maliciously, without probable cause," and that they "well knew or should have known" that their action was pretended and unfounded. Thus, the Ninth Circuit Court, quoting extensively from Judge Learned Hand's opinion in Gregoire v. Biddle, supra, held that such allegations were insufficient to support the complaint for damages where the action complained of was part of the performance of the officers' official duties.

The conspiracy charge contained in Count III of plaintiff's complaint suggests in paragraph 3 of that Count that the defendants had ulterior motives in doing the several acts for which they are charged as a part of the conspiracy. This Count of the plaintiff's complaint is insufficient for the same reasons set forth in Bershad v. Wood, supra. See also Waterman v. Nelson, supra; Fletcher v. Wheat, supra; Cooper v. O'Connor, supra.

That medical officers in the Armed Forces and those doctors who contract with the military should be covered by the immunity rule would appear quite apparent if the rule, as presently applied by the United States Circuit Courts and the United States Supreme Court is to have a consistent application. The immunity from liability for official acts is no longer limited to cabinet members, department heads or judges (as was the case when the rule originally developed; see cases cited Bershad v. Wood, supra), but now extends to lesser officials in similar capacities as the defendants sued herein. Hughes v. Johnson, supra; Bershad v. Wood, supra; O'Campo v. Hardisty, supra; Preble v. Johnson, supra; Laughlin v. Rosenman, supra; Cooper v. O'Connor, supra; Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211; Brown v. Rudolph, 58 App.D.C. 116, 25 F.2d 540; Carson v. Behlen, supra; Kendrick v. United States, D.C., 82 F.Supp. 430; Hartline v. Clary, supra.

Immunity for acts of medical personnel in general has been granted previously by Federal Courts. In Taylor v. Glotfelty, supra, immunity was granted to a psychiatrist who had allegedly defamed the plaintiff in declaring him insane, and such defamation, similar to the instant case, was alleged to have been made maliciously and without the psychiatrist having personally examined the plaintiff. See also, Brown v. Rudolph, supra; Kendrick v. United States, supra.

For the reasons stated above the complaint fails to state a claim upon which relief can be granted as to the four defendants served; therefore, the dismissal motion of these defendants must be granted.

The plaintiff has filed a motion to remand this case back to the state court. This Court has removal jurisdic-

---

8. This point is not even discussed in plaintiff's brief. As a matter of fact, plaintiff's entire brief on the motion to dismiss is irrelevant to the questions raised in that motion. Further, plaintiff's action against the United States (Civ. No. 8336) 217 F.Supp. 381 ante, is based upon the status of defendants herein and others as being employees of the United States. Finally, it is to be noted that plaintiff's motion to remand concerns itself solely with 28 U.S.C.A. § 1442(a) (1) which is not at all applicable to the matter that is before us.

tion over this entire case under the provisions of 28 U.S.C.A. § 1442a. It is within the Court's discretion to retain jurisdiction over any separable cause. See, 1A Moore's Federal Prac. pp. 787–88. In the present state of the record the Court elects to retain jurisdiction of this case.

It is, therefore, ordered that defendants' motion to dismiss be, and the same is hereby granted as it pertains to the four defendants presently served; that plaintiff's complaint and the cause of action sought to be stated therein is hereby dismissed as to defendants Peal, Rhame, Reiss and Pfeiler; and that plaintiff's motion to remand be, and the same is, hereby denied.